FILED & JUDGMENT ENTERED

Steven T. Salata

May 16 2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No: 12-32315 |
| ADRIENNE L. SEARS | ) | Chapter 7 |
| | ) | |
| _____ Debtor. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Case No: 12-32602 |
| TIMOTHY D. MCELROY | ) | Chapter 7 |
| CYNTHIA M. MCELROY | ) | |
| | ) | |
| _____ Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Case No: 12-32606 |
| R. MICHAEL SAVAGE | ) | Chapter 7 |
| DIANNE M. SAVAGE | ) | |
| | ) | |
| _____ Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Case No. 12-32710 |
| NANCY L. WINTERS | ) | Chapter 7 |
| | ) | |
| _____ Debtor. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Case No. 12-32600 |
| HERBERT W. RAYBURN | ) | Chapter 7 |
| | ) | |

1

|                  |   |                      |
|------------------|---|----------------------|
| Debtor.          | ) |                      |
|                  | ) |                      |
| IN RE:           | ) |                      |
|                  | ) | Case No. 12-32636    |
| WILLIS W. HORTON | ) | Chapter 7            |
| NANCY C. HORTON  | ) |                      |
|                  | ) |                      |
| Debtors.         | ) |                      |
|                  | ) |                      |
| IN RE:           | ) |                      |
|                  | ) | Case No. 12-32945    |
| BLANDENA T. DAVIS| ) | Chapter 7            |
|                  | ) |                      |
| Debtor.          | ) |                      |

**ORDER GRANTING RELIEF FROM STAY**

THESE MATTERS are before the Court on the Motions for Relief from Stay filed under 11 U.S.C. §362(d) by several parties seeking authority to file foreclosure proceedings against the assundried Chapter 7 debtors' properties.  The Chapter 7 Trustees objected to the motion(s) in each case.  Given the similarity of facts and legal issues raised by these motions, these motions were consolidated for hearing and decision.

Hearings were held on March 1, 2013.  Wayne Sigmon and Keith Johnson appeared as the Chapter 7 Trustees and attorneys for the Trustees in these cases.  Matthew L. Underwood appeared on behalf of Bank of America, N.A. ("Bank of America") in the Sears case and on behalf of Wells Fargo, N.A. ("Wells Fargo") in the Davis and Rayburn cases.  Kimberly Sheek appeared on behalf of Wells Fargo in the Savage case and Homeward Residential in the Horton case.  Theodore A. Nodell, Jr. appeared on behalf of Green Tree Servicing ("Green Tree") in the McElroy case.  Joseph J. Vonnegut appeared on behalf of Bank of America in the Savage case and Americas Servicing Company in the Winters case.  O Max Gardner, III filed an amicus brief and appeared as an interested party supporting the Trustees' objections.

In each case, the debtor is in default on the mortgage note.  Payments are not being made, and the secured claim is not being adequately protected.  Cause clearly exists to grant relief from stay, but for a common objection raised by the two Trustees: does the party seeking relief from stay have legal standing to assert the motion?  The Trustees suggest that they do not.

**Held:** Under the facts presented, the undersigned disagrees with the Trustees and believes that each movant has standing to seek relief from stay.  Since the mortgage loans in question are not adequately protected, relief from stay is **GRANTED** to each movant as to its collateral to permit it to initiate foreclosure proceedings in state court.

### STATEMENT OF POSITIONS

While mortgage lending is older than the Republic, securitized lending is a relatively new phenomena, which trades mortgage loans (and interests within a batch of mortgage loans) as if they were commodities.  However, securitized lending overlays state real property law, which generally presumes that interests in real property are enforceable only if recorded in the local registry of deeds office.[1]  The case law is only now catching up to a multitude of new legal questions presented by these new lending practices.  Attempting to establish legal precedent in this judicial district, the Trustees have objected to these Motions for Relief from Stay.

At hearing, the Trustees argued that a distinction exists between a party being entitled to enforce a mortgage note under the Uniform Commercial Code ("UCC") and it being the "owner" of the underlying deed of trust with authority to foreclose under North

---

[1] North Carolina being a "pure race" state. *See* N.C. Gen. Stat. §47-18 (2013) providing that no contract to convey real property "shall be valid to pass any property interest as against lien creditors ... but from the time of registration thereof in the county where the land lies...."

Carolina real property law.  In particular, the Trustees challenged relief from stay in cases in which there was never an assignment of the deed of trust recorded in the real property records or where Mortgage Electronic Registration System ("MERS")[2] assigned the deed of trust.  According to the Trustees, because the Movants are not record assignees of these mortgages, they are not entitled to foreclose the instruments.  In addition to this common theory, the Trustees interposed a variety of other standing objections specific to the individual cases.

Finally, the Court asked the Trustees at hearing just how their bankruptcy estates stood to profit from these objections.[3]  In each case, there exists a valid, enforceable note and recorded deed of trust encumbering the property, which is not being adequately protected.  If, as the Trustees argue, the present movants lack standing to seek relief from stay, it would appear that someone else up the title chain would be so entitled.  The Trustees' objections hint at some future legal action to attack the mortgage obligations, but the legal theory on which they intend to proceed is unclear.

In their post-hearing briefs, the Trustees and Mr. Gardner have addressed that issue, albeit not satisfactorily.  Certain movants have challenged the Trustee's legal standing to mount such an attack.  One movant pointed out that since no such avoidance action has been filed, the issue is not ripe for decision.  That is certainly true.  While the Trustees' "end game" is still a mystery, the question of whether a Chapter 7 Trustee can undo or avoid these mortgage obligations is not ripe for decision.

---

[2] MERS is a registry that tracks ownership of securitized mortgages but does not acquire beneficial interests in the same.

[3] The bankruptcy stay will dissolve upon closing of the case, leaving the secured creditor at liberty to initiate its foreclosure proceeding. 11 USC §362.  Since most of the present cases are "no asset" Chapter 7 cases, this would have already occurred but for these objections.

**FINDINGS OF FACT**

I.    **Adrienne Sears.**

On October 26, 2007, Debtor Adrienne Sears ("Sears") borrowed $140,000 from Countrywide Bank, FSB ("Countrywide FSB").   She executed a Note in favor of Countrywide FSB and a Deed of Trust on her Charlotte, North Carolina residence. That Deed of Trust was perfected by recording in the Mecklenburg County Register of Deeds on October 26, 2007.

Sears filed Chapter 7 on September 26, 2012 and received her discharge on January 7, 2013.   The Trustee filed a Report of No Distribution on October 31, 2012, confirming that this is a "no-asset" case.   On November 21, 2012, Bank of America,[4] not Countrywide FSB, moved for relief from stay in order to foreclose the Deed of Trust. Attached to the Motion was a copy of the Note and Deed of Trust.   The Note reflects two endorsements:   one from Countrywide FSB to Countrywide Home Loans, Inc ("Countrywide Loans"), and a second by Countrywide Loans, in blank.

At hearing, Bank of America presented the original mortgage note and further advised that it held this Note as successor in interest to Countrywide Loans due to their 2008 merger.

Neither side asserts that there is equity in Sears' residence over the mortgage debt. According to the Motion, the mortgage balance exceeds $159,866.43; the estimated home

---

[4] Sears listed Bank of America, not Countrywide Bank FSB, as the secured creditor in Schedule D of her Petition.

value is only $112,000, the same value attributed to the property by the Debtor in her petition.[5]

In addition to his general issues regarding "ownership" of the notes and deeds of trust), the Trustee questions whether: 1) an agent (such as he assumes Bank of America to be) has standing to obtain relief from stay in its own name; and 2) the effect of a notation in the Deed of Trust that makes MERS a beneficiary (as nominee for the Lender and assigns).

## II.    Timothy and Cynthia McElroy

Similarly, on August 31, 2007, Debtors Timothy Donald McElroy and Cynthia McElroy ("the McElroys") obtained a mortgage loan from Bank of America, memorialized by a Promissory Note and Deed of Trust in the Bank's favor. The Deed of Trust encumbers the McElroy's lot in Weddington, NC, and was perfected by recordation on September 6, 2007 in the Union County, N.C. Register of Deeds.

The McElroys filed Chapter 7 on October 30, 2012 and received their discharge on February 11, 2013. While the Trustee has hired counsel in the case, at present this is a "no-asset" case.

On November 14, 2012, Green Tree, not Bank of America, sought relief from stay to foreclose against the McElroy's lot in Weddington, N.C. In its motion, Green Tree alleged that it holds the Promissory Note, even though the attached Note and Deed of Trust are drawn in favor of Bank of America. This incongruity led the Trustee to object and to demand proof that Green Tree was the current holder of the Note and Deed of Trust.

---

[5] The Trustees in these cases have not contested any of the underlying facts alleged in the motions.

At hearing, counsel for Green Tree had possession of the original Note which has not been endorsed. It was also established that Green Tree is acting as servicer for Bank of America under a limited Arizona power of attorney. That power of attorney is not recorded in any North Carolina registry.

Neither side believes there is any equity in the property. According to Green Tree, $298,634,64 is owed on the Note, whereas the lot value is only $250,000, the same value ascribed to it by the McElroys' petition.

In addition to his general objections, the Trustee questions: 1) whether the limited power of attorney is sufficient to convey legal standing to foreclose to Green Tree; 2) whether the power of attorney is effective given the lack of recordation in this State; and 3) whether the agent for a secured creditor can foreclose in its own name.

### III.     Michael and Dianne Savage

The Savages filed a Chapter 7 bankruptcy case on October 30, 2012. Their discharge was granted on February 26, 2013. This is a potential asset case.

#### a.   Wells Fargo's Motion for Relief from Stay

On September 2, 2003, Michael Savage and Dianne Savage (the "Savages") obtained a home loan from Bank of America. They executed a Note in favor of Bank of America, secured by a Deed of Trust on their residence located in Monroe, NC. That instrument was recorded in the Union County Register of Deeds office on September 8, 2003.

On December 3, 2012, Wells Fargo Bank, NA, fka Wells Fargo Bank Minnesota, NA as Trustee for Banc of America Mortgage Securities, Inc. Mortgage Pass-Through Certificates, Series 2003-J ("Wells Fargo") filed a Motion for Relief from Stay

against the property.  The motion asserts a loan balance in excess of $280,956.04 and adopts the Savage's scheduled value of $389,060.  Because the property is also subject to another mortgage in favor of BB&T of $74,968, there appears to be little equity in the residence.  The Savages indicated an intention to surrender the residence to foreclosure.

Wells Fargo attached a copy of the Note and Deed of Trust to its Motion.  The Note contains a special endorsement by Bank of America to "Wells Fargo Bank Minnesota, National Association as Trustee for the holders of the Banc of America Mortgage Securities, Inc. Mortgage Pass-Through Certificates, Series 2003-J."

On December 6, 2012, the Trustee filed a response to the motion demanding that the Movant "provide detailed documentation …to prove that it is the owner of the Note and security document."  The Trustee considered the Note endorsement to be  "strange" and questioned how Banc of America Mortgage Securities, Inc. came to "own" the Note. He demanded proof of "ownership" of both documents by the Movant and proof that each transfer of the Note and security agreement was by an authorized seller. The Trustee contended that in order for the movant to enforce the Deed of Trust, the Movant's ownership of the Deed of Trust must be established in the real property record.  Because this assignment of the Deed of Trust was unfiled, the Trustee asserted that Bank of America was still the owner of the Deed of Trust.

By the hearing on March 1, 2013, counsel for Wells Fargo was in possession of the original Note which reflected the above-referenced endorsement.

**b.  Bank of America's Motion for Relief from Stay.**

On June 27, 2007, Michael Savage ("Savage") borrowed $110,250 from Homeowners Mortgage Enterprises ("HME") and executed a Note in its favor secured by

a Deed of Trust on Savage's Charlotte, N.C rental house.   The Deed of Trust was perfected by recording in the Mecklenburg County Register of Deeds on June 28, 2007.

On January 2, 2013, Bank of America, rather than HME, filed a Motion for Relief from Stay against the property. The attached Note contains three endorsements: HME endorsed the Note to Countrywide Bank, FSB; Countrywide Bank, FSB then endorsed the Note to Countrywide Home Loans; and finally Countrywide Home Loans endorsed the Note in blank.   The motion also contained as an exhibit an assignment of the underlying Deed of Trust by MERS to "Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a/ Countrywide Home Loans Servicing, LP" recorded in Mecklenburg County on May 31, 2012.

On January 22, 2013, the Trustee filed a Response.   He contended that the documents attached to Bank of America's motion do not establish that it is the "owner" of the Note and Deed of Trust; he also questioned the legal effect of MERS' assignment of the Deed of Trust to Bank of America.   He alleged a lack of consideration and disputed whether MERS, a non-owner of the Deed of Trust, had authority to transfer it to Bank of America.

At the hearing on March 1, 2013, counsel for Bank of America produced a copy of the Note, but not the original, which was still in transit to counsel.

### IV.   Nancy Winters

On May 19, 2005, Nancy Winters ("Winters") borrowed $114,012 from Pine State Mortgage Corporation.   She executed a Note in favor of Pine Street Mortgage Corporation and a Deed of Trust on her residence in Charlotte, NC.   That Deed of Trust was perfected by recording in the Mecklenburg County Register of Deeds on May 26,

2005.

Winters filed a Chapter 7 bankruptcy petition on November 8, 2012 and was discharged on February 19, 2013. This is an "asset" case.

On November 16, 2012, America's Servicing Company ("ASC"), not Pine Street Mortgage Corporation, filed a Motion for Relief from Stay as the servicing agent for "The Bank of New York Mellon, ("BNYM") FKA the Bank of New York as Successor in Interest to JP Morgan Chase Bank NA as Trustee for the Structured Asset Mortgage Investments in II Inc. Bear Stearns Alt – A Trust 2005-7, Mortgage Pass Through Certificates, Series 2205-7." The Motion asserted a loan balance in excess of $114,404.94 and a home value of $137,400. Because the property is also subject to another mortgage in favor of Chase for $24,424.00, there appears to be no equity in the residence. Winters indicated an intention to surrender the residence to foreclosure.

Attached to the Motion was a copy of the Note and Deed of Trust. The Note contains an endorsement in blank by Pine State Mortgage Corporation.

On November 27, 2012, the Trustee filed a Response to the Motion. He questioned whether or not ASC has standing to bring the motion, whether the proper parties are joined in the motion, and whether ASC is entitled to enforce the Note and Deed of Trust. His questions stem from the language employed in the Motion. ASC first asserts it is the servicing agent for BNYM, which ASC states to be the holder of the secured claim. Then, later in the Motion, ASC states that BNYM services the loan in question. Thereafter, ASC states that the Note is either made payable to Creditor or has been duly endorsed and that creditor, directly or through an agent, has possession of the Note. ASC does not define "Creditor."

At the hearing on March 1, 2013, ASC produced the original Note, which now contains an additional special endorsement to JP Morgan Chase Bank. The Trustee argued that ASC was not entitled to relief from stay as the Note was endorsed to an entity other than ASC or BNYM. The Trustee also questioned how BNYM was a successor in interest to JP Morgan Chase since JP Morgan Chase is still an operating entity.

### V.    Herbert Rayburn

On October 24, 2005 Herbert Rayburn ("Rayburn") borrowed $111,500 from Southtrust Bank of Central Carolina ("Southtrust") and executed a Promissory Note in its favor secured by a Deed of Trust on Rayburn's home in Charlotte, NC. The Deed of Trust was properly perfected by recording in the Mecklenburg County Register of Deeds on October 27, 2005.

On October 29, 2012, Rayburn filed a Chapter 7 bankruptcy petition. He received his discharge on February 13, 2013. While the Trustee has hired counsel, at present this is a "no asset case."

On November 14, 2012, Wells Fargo, not Southtrust, filed a Motion for Relief from Stay. The Motion asserted a loan balance in excess of $70,958.52. The Debtor scheduled the property value as $120,000 but the Mecklenburg County Tax Assessor lists the tax value as $147,500. The property is also subject to another mortgage in favor of GMAC in the amount of $37,164.00.

Wells Fargo attached a copy of the Note and Deed of Trust to its Motion. The Note contains an endorsement in blank by Wachovia Corporation. At hearing, Wells Fargo advised that it held this Note as successor in interest to SouthTrust. In 2004, Wachovia Corporation acquired SouthTrust. In 2008, Wells Fargo & Company acquired

Wachovia Corporation.  Wells Fargo Bank, N.A. is a wholly owned subsidiary of Wells Fargo & Company.

On November 20, 2012, the Trustee filed an unspecific objection to Wells Fargo's Motion.

### VI.  Willis and Nancy Horton

On May 20, 2005, Willis and Nancy Horton (the "Hortons") borrowed $106,720.00 from American Home Mortgage Acceptance ("American Home Mortgage") and executed a Note in its favor secured by a Deed of Trust on the Hortons' rental property in Charlotte, NC.  That Deed of Trust was perfected by recording in the Mecklenburg County Register of Deeds on May 23, 2005.

The Hortons filed a Chapter 7 bankruptcy petition on October 31, 2012 and received their discharge on February 11, 2013.  While the Trustee has hired counsel, at present this is a "no asset case."

On December 7, 2012, Homeward Residential, Inc. Servicer for Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2005-2 ("Homeward Residential") filed a Motion for Relief from Stay.  Homeward Residential attached a copy of the Note and Deed of Trust to the Motion.

The Note contains an endorsement in blank by American Home Mortgage.  The Deed of Trust contains an assignment, dated October 15, 2012, by MERS as nominee for American Home Mortgage Acceptance to Deutsche Bank National Trust Company as Indenture Trustee for American Home Mortgage Investment Trust 2005-2.

Neither side asserts there is equity in the residence over the sums owed on the mortgage.  According to the Motion, the mortgage balance exceeds $119,744.94; total

payments due as of the date of the motion are $5,891.91, and the estimated home value is only $120,000.  In their statement of intent, the Hortons indicated they would either workout payments or surrender the property. With no reaffirmation in the file, it appears that the Hortons decided to surrender.

The Trustee filed an objection on November 20, 2012. In addition to his general issues regarding ownership of the notes and deeds of trust, the Trustee questioned the validity of the assignment of the Deed of Trust by MERS, which he maintains is neither the lender nor the original party to the Note, nor is it authorized to do business in North Carolina.

At the hearing on March 1, 2013, counsel for Homeward Residential appeared with the original Note endorsed in blank.

### VII.    Blandena Davis.

On June 27, 2006, Blandena Davis ("Davis") borrowed $123,608.00 from Wells Fargo Bank and executed a Note in its favor secured by a Deed of Trust on her property in Charlotte, NC. That Deed of Trust was perfected by recording in the Mecklenburg County Register of Deeds on June 27, 2006.

On December 14, 2012, Davis filed a Chapter 7 bankruptcy petition. While the Trustee has hired counsel, at present this is a "no asset case."

On December 26, 2012, "US Bank National Association, as Trustee for SASCO Mortgage Loan Trust 2006-WF3 by and through Wells Fargo Bank, NA" filed a Motion for Relief from Stay.  According to the Motion, Wells Fargo Bank services the property but any future foreclosure will be brought in the name of US Bank National Association, as Trustee for SASCO Mortgage Loan Trust 2006-WF3.

Wells Fargo attached a copy of the Note and Deed of Trust to the Motion.  The Note contains an endorsement in blank by Wells Fargo Bank, N.A.

Neither side asserts there is equity in Davis' residence over the sums owed on her mortgage. The loan balance exceeds $197,317.36.  Davis scheduled the value of the residence at $150,000 but the Mecklenburg County Tax Assessor lists the value as only $106,900.

The Trustee filed an objection to the Motion on January 9, 2013.  The Trustee indicated he was confused as to why U.S. Bank National Association is the movant since the real property records indicate that Wells Fargo Bank is the holder of the Deed of Trust, which has not been assigned.

## CONCLUSIONS OF LAW

The Court, having reviewed the pleadings, the record in these cases, and having considered the arguments of counsel, finds and concludes as follow:

### I.     OVERARCHING LEGAL PRINCIPLES

#### a.   A creditor need only show that it has a colorable claim to the property to seek relief from stay.

Relief from stay hearings are "meant to be summary in character." *In re Vogler*, 2009 WL 4113704, at *3 (Bankr. M.D.N.C. Nov. 25, 2009) (*citing Estate Const. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 219 (4th Cir. 1994)).   Given this summary nature, "relief from stay proceedings only require a determination of whether a creditor has a colorable claim to the estate property at issue." *Id.*  "Questions of the validity of liens are not generally at issue in a §362 hearing, but only whether there is a *colorable* claim of a lien on property of the estate."  *In re Vitreous Steel Prods. Co.,* 911

14

F.2d 1223, 1234 (7th Cir. 1990) (emphasis in original).

### b. To have a colorable claim, a creditor must be a party in interest.

Section §362(d) of the Bankruptcy Code permits a party in interest to file a motion for relief from stay. "Party in interest" is not defined by the Code, but the Fourth Circuit has defined real party in interest as a "person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973).

In the context of a motion for relief from stay, courts have found that "[t]he real party in interest with respect to ... enforcement of the rights of a mortgagee in a bankruptcy is the party entitled to enforce the note and its accompanying mortgage." *See In re Robinson*, No. 07–02146–8–JRL, 2011 WL 5854905, at *2 (Bankr. E.D.N.C. Nov. 22, 2011) (citations omitted); *In re Patterson*, No. 12–50201, 2012 WL 5906865, at *1 (Bankr. W.D.N.C. Nov. 26, 2012).

The question is not whether the movant is the "owner" of the note, but whether the movant has the right to enforce the note pursuant to the applicable law. In North Carolina, the UCC sets forth the requirements that must be met in order to obtain rights in a promissory note necessary to enforce its provisions.

### c. The holder of a negotiable instrument is a party in interest.

Under North Carolina law, the holder of a negotiable instrument has the right to enforce it. *See* N.C. Gen. Stat §25-3-301 (2013). A promissory note is a negotiable instrument. N.C. Gen. Stat. §25-3-104 (2013). A party becomes the holder of a negotiable instrument when that instrument is negotiated to that person. A "holder" is defined under North Carolina law as a "person with possession of a negotiable instrument

that is payable either to bearer or to an identified person that is the person in possession."

N.C. Gen. Stat. §25-1-201(b)(21)(a) (2013).

When a note is endorsed over to the order of an identified person, it is a special

endorsement. *See* N.C.G.S §25-3-205(a)(2011); *Econo-Travel Motor Hotel Corp. v.*

*Taylor*, 301 N.C. 200, 203 (1980). When an instrument is not specifically endorsed, it is

said to be endorsed in blank. "When endorsed in blank, the instrument becomes payable

to the bearer and may be negotiated by transfer of possession alone until specially

endorsed." *In re Robinson*, 2011 WL 5854905, at *2; N.C. Gen. Stat. §25-3-205(b)

(2013).

"The recipient of an instrument endorsed in blank obtains whatever rights the

transferor had, including the power to enforce the instrument." *Horvath v. Bank of New*

*York, N.A.*, 641 F.3d 617, 621 (4th Cir. 2011). As the Fourth Circuit noted, "the old

adage about possession being nine-tenths of the law is, if anything, an understatement.

Whoever possesses an instrument endorsed in blank has full power to enforce it." *Id.*

When determining whether a writing or stamp on a promissory note is in fact an

endorsement within the meaning of the UCC, the North Carolina Supreme Court has

made it clear that the standard in favor of the legitimacy of the endorsement is low. The

Court has held that an, "endorsement is a 'signature…that alone or accompanied by other

words is made on an instrument for purposes of negotiating the instrument.'" *In re Bass*,

738 S.E.2d 173, 176 (N.C. 2013). The State Supreme Court suggests that without

contrary evidence, an endorsement has the presumption of being adequate. "The UCC

drafters' strong presumption in favor of the legitimacy of endorsements protects the

transfer of negotiable instruments by giving force to the information presented on the

face of the instrument." *Id.*[6]

### d.   A loan servicer is a party in interest.

It is generally accepted that a loan servicer is a "party in interest" and has standing by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage.   *See In re Neals*, 459 B.R. 612, 617 (Bankr. D.S.C. 2011); *see also Bankers Trust (Delaware) v. 236 Beltway Inv.,* 865 F. Supp. 1186, 1191 (E.D. Va. 1994) (concluding that both lender and servicer have standing to foreclose even if servicer is not the holder of the mortgage).

### e.   A successor entity by merger or acquisition to the original promissory note beneficiary is a party in interest.

An entity that has acquired another entity obtains whatever rights the original entity had, including the ability to enforce a promissory note.   N.C. Gen. Stat. §53C-7-205 states: "Whenever any depository institution … shall combine with … any other depository institution … or other company … such latter institution shall be deemed substituted for and shall have all the rights and powers of the transferring institution." (2013). Therefore, such acquiring institution is a party in interest entitled to seek relief from stay.

### f.   The holder of a promissory note need not produce the original note to have standing to seek relief from stay.

Constant demands by the borrowers, trustees, or even courts for the production of the original promissory note are burdensome to a creditor and usually unnecessary in a relief from stay context.

---

[6] The question of the timing of the endorsements was not addressed by the parties, nor are there any facts that would make it an issue.  For this reason, the Court will assume that the endorsements occurred at appropriate times.

The North Carolina Court of Appeals held that when evidence of a blank endorsement is present on a promissory note, a mere photocopy of the promissory note along with an affidavit from the purported note holder would be sufficient to give said note holder the authority to enforce the promissory note. *Dobson v. Substitute Tr. Servs., Inc.*, 711 S.E. 2d 728, 729 (N.C. App. 2011). The Court stated specifically, "[t]his Court has held that where there is no evidence that photocopies of a note or deed of trust are not exact reproductions of the original instruments, a party need not present the original note or deed of trust and may establish that it is the holder of the instruments by presenting photocopies of the note or deed of trust." *Id.* (*citing In re Adams*, 204 N.C. App. 318, 232 (N.C. Ct. App. 2010)).

Furthermore, the assertion that, "I cannot confirm the authenticity of the copy of the [n]ote produced by the Defendants," is insufficient to cast doubt upon the bank's status as holder of the promissory note. *In re Bass*, 738 S.E.2d at 177 (*citing Dobson*, at 731). Thus, unless there is direct contrary evidence that the photocopy of a note is not the exact copy of the original note, the creditor does not need to present the original note to have standing to seek relief from stay.

### g. The holder of a promissory note has standing to seek relief from stay even without a recorded assignment of the deed of trust.

The validity of an assignment, either by MERS or another institution, or even the failure to transfer or assign a deed of trust does not render the holder of the underlying promissory note ineligible to seek relief from stay. It is well settled under North Carolina law that the deed of trust follows the note. *See In re Robinson*, 2011 WL 5854905, at *3 (*citing Jenkins v. Wilkinson*, 113 N.C. 532, 532 (N.C. 1893)). In *Jenkins*, the North

Carolina Supreme Court held that:

> [t]he debt is the principal thing; the mortgage to secure it is the incident or accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both.  The transfer of the note carries with it the security without any formal assignment or deliver, or even mention, of the latter.

113 N.C. at 532.

The North Carolina legislature codified the principle that an assignment of a deed of trust is unnecessary for the enforcement of a promissory note if it has been transferred from the original beneficiary to another party.  N.C. Gen. Stat. §47-17.2 states:

> It shall not be necessary in order to effect a valid assignment of a note and deed of trust, mortgage, or other agreement pledging real property or an interest in real property as security for an obligation, to record a written assignment in the office of the register of deeds in the county in which the real property is located. A transfer of the promissory note or other instrument secured by the deed of trust, mortgage, or other security interest that constitutes an effective assignment under the law of this State shall be an effective assignment of the deed of trust, mortgage, or other security instrument. The assignee of the note shall have the right to enforce all obligations contained in the promissory note or other agreement, and all the rights of the assignor in the deed of trust, mortgage, or other security instrument, including the right to substitute the trustee named in any deed of trust, and to exercise any power of sale contained in the instrument without restriction…..

(2012).

Additionally, our sister Bankruptcy Court in *In re Robinson* held that a creditor in possession of a note endorsed in blank had standing to prosecute a motion for relief from stay even without a "formal assignment" of the deed of trust. 2011 WL 5854905, at *8. That court reasoned, " [t]here is no evidence to suggest that the original note, endorsed in

blank, is fraudulent. Therefore because the deed of trust follows the note, the holder of the note, … has the right to the interest securing the note without a formal assignment." *Id.*

In short, the Trustee's general premise that a movant must be both the note holder and assignee of record of the deed of trust is incorrect.

## II.    Specific Cases

With these controlling principles in mind, we now turn to the facts of each case.

### a.  Adrienne Sears.

Cause clearly exists to grant relief from stay given that Sears is in default on her obligations under the mortgage note.  The mortgage balance exceeds $159,866.43 and the estimated home value is only $112,000.  Payments are not being made, and the secured claim is not being adequately protected.

Bank of America presented the original Note at the hearing.  Further, it acquired Countrywide's interest in that Note by merger.  A notation in the Deed of Trust that makes MERS a beneficiary (as nominee for the Lender and assigns) does not change the fact that Bank of America is entitled to enforce the Note and Deed of Trust, meaning Bank of America has a "colorable claim" to the Property.  For those reasons, Bank of America's Motion for Relief from Stay is **GRANTED.**

### b.  Timothy and Cynthia McElroy

It is undisputed that the McElroys are in default under the Note and cause exists to grant relief from stay.  $298,634,64 is owed on the Note, whereas the lot value is only $250,000.

As discussed above, a servicer of a note has standing to seek relief from stay.

Here, Green Tree as the servicer of the Note as well as by its possession of the original

Note, has standing to seek relief from stay. While it appears that an out of state limited

power of attorney is effective without being recorded in a North Carolina registry, that is

not at issue since Green Tree has possession of the original Note. Therefore, Green Tree's

Motion for Relief from Stay is **GRANTED**.

### c.  Michael and Dianne Savage

#### i.  Wells Fargo's Motion for Relief from Stay

There is no dispute that the Savages are in default under the Note and cause exists

to grant relief from stay.  The motion asserts a loan balance in excess of $280,956 and

like the Savage's schedules, a home value of $389,060.  Because the property is also

subject to another mortgage scheduled in favor of BB&T of $74,968, there appears to be

little equity in the property.

At hearing, Wells Fargo had possession of the original Note specially endorsed to

it.  As discussed above, it is not necessary for Wells Fargo to establish its ownership of

the Note and Deed of Trust in the real property records, nor is it required to prove that

each transfer of the Note and security agreement was by an authorized seller.  Here,

Wells Fargo, by its possession of the original Note specially endorsed to it, is the holder

of the Note and has standing to seek relief from stay.  Therefore, Wells Fargo's Motion is

**GRANTED**.

#### ii.  Bank of America's Motion for Relief from Stay.

Similarly, it undisputed that the Savages are in default under the Note to Bank of

America and cause exists to grant relief from stay.

Bank of America has standing to seek relief from stay as successor by merger to Countrywide and on the strength of the uncontested copy of the copy of the blank endorsed Promissory Note.  As discussed above, producing the original note is not necessary if the Trustee has not objected to the validity of the copy.  Furthermore, proving the validity of an assignment of the Deed of Trust by MERS is not required on a motion for relief from stay, as it does not render the holder of the underlying promissory note ineligible to seek relief from stay.  Therefore, Bank of America's Motion for relief from stay is **GRANTED.**

### d.  Nancy Winters

It is undisputed that Winters is in default under the Note and cause exists to grant relief from stay.  The loan balance is in excess of $114,404.94 and the property is also subject to another mortgage scheduled in favor of Chase for $24,424.00.  Because the value of the home is $137,400, there appears to be little equity in the residence.

At the hearing, ASC produced the original Note endorsed to JP Morgan Chase Bank.  ASC is servicer of the Note on behalf of BNYM.  BNYM is holder of the Note by virtue of a merger between JP Morgan Chase and BNYM in 2006.

ASC, as servicer of the Note and by possession of the original Note at hearing has standing to seek relief from stay.  Therefore, ASC's Motion for Relief from Stay is **GRANTED.**

### e.  Herbert Rayburn

Cause exists to grant relief from stay.  The loan balance is in excess of $70,958.52 and the property is also subject to another mortgage scheduled in favor of GMAC in the amount of $37,164.00.  Rayburn is in default on his payments.  The scheduled value of

the property is $120,000 and the Mecklenburg County Tax Assessor lists the tax value as $147,500.

Wells Fargo had possession of a copy of the Promissory Note at hearing and the Trustee did not dispute the validity of the copy.  Wells Fargo holds this Note as successor in interest to Southtrust and Wachovia Corporation.

By virtue of its possession of a copy of the Promissory Note endorsed in blank, Wells Fargo has standing to seek for relief from stay.  Therefore, Wells Fargo's Motion for Relief from Stay is **GRANTED**.

### f.   Willis and Nancy Horton

It is undisputed that the Horton's are in default under the Note and cause exists to grant relief from stay.  The mortgage balance exceeds $119,744.94; total payments due as of the date of the motion are $5,891.91, and the estimated home value is only $120,000.

Homeward Residential appeared at the hearing as servicer for Deutsche Bank National Trust Company.  Homeward Residential was in possession of the original Promissory Note endorsed in blank.  As discussed above, proving the validity of the assignment by MERS is not necessary to have standing.

For these reasons, Homeward Residential's Motion for Relief from Stay is **GRANTED**.

### g.   Blandena Davis.

Cause exists to grant relief from stay.  The mortgage balance exceeds $197,317.36.   Davis scheduled the value of the residence at $150,000 and the Mecklenburg County Tax Assessor lists the value as only $106,900.

Wells Fargo appeared at the hearing as servicer and agent for U.S. Bank National

Association and has possession of an uncontested copy of the Note endorsed in blank and Deed of Trust.

For these reasons, Wells Fargo's Motion for Relief from Stay is **GRANTED**.

## CONCLUSION

While it is now clear that the Movants are entitled to relief from stay in these cases, the Court has sympathy for the Trustees.   On the face of the original motions, standing was unclear.   In practice, Movants should address standing issues and the salient facts in their original motion, stating whether they are asserting rights as an agent, assignee, or successor in interest, not in response to an objection by the Trustee or at hearing.

**SO ORDERED.**

This Order has been signed electronically.        United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.